Case 2:25-cv-00252   Document 1   Filed on 09/26/25 in TXSD   Page 1 of 6

United States Courts
Southern District of Texas
FILED
*September 26, 2025*
Nathan Ochsner, Clerk of Court

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS CORPUS CHRISTI DIVISION

Erick Blackwood-Head aka Erick Scott Head

v.

United States Courts
Southern District of Texas
FILED
AUG 1 8 2025
Nathan Ochsner, Clerk of Court

Comcast Corporation (NBCUniversal), The Walt Disney Company, News Corporation, Paramount Global, Warner Bros. Discovery, Inc., Amazon.com, Inc.

Case No. [To Be Assigned]

## COMPLAINT FOR VIOLATIONS OF FEDERAL ANTITRUST LAWS, CIVIL RIGHTS LAWS, AND CONSPIRACY TO SUPPRESS PUBLIC INTEREST CONTENT
### INTRODUCTION

Plaintiff Erick Blackwood-Head, aka Erick Scott Head, an individual creator and advocate, brings this action against Defendants Comcast Corporation (NBCUniversal), The Walt Disney Company, News Corporation, Paramount Global, Warner Bros. Discovery, Inc., and Amazon.com, Inc. (collectively, the "Big Six" or "Defendants"), for engaging in a conspiracy to suppress Plaintiff's published works, including Papa Sorin and Father of Sorin, among others, and cover up systemic abuses such as human trafficking, illegal government surveillance, and forced disappearances, and discriminate against Plaintiff due to their advocacy on human rights, the war on terror, climate change, government abuse of power, media collusion to promote commercialism, police violence, and racism.

Defendants, controlling approximately 90% of the U.S. media market, have allegedly formed an unlawful cartel to manipulate content distribution, suppress public interest stories, and favor established artists and government narratives, violating the Sherman Antitrust Act (15 U.S.C. §§ 1, 2), Clayton Antitrust Act (15 U.S.C. § 14), 18 U.S.C. §§ 241 and 242 (civil rights conspiracy and deprivation under color of law), and state consumer protection laws.

This complaint draws parallels to the systemic abuses described in the OMCT report Internal Exile: A Global Review of the Practice of Internal Displacement as a Form of Torture (available at https://www.omct.org/site-resources/legacy/Final_InternalExile.pdf), which details state-sponsored forced disappearances and suppression of dissent, alleging Defendants aided similar cover-ups through media control.

Plaintiff seeks injunctive relief, damages, and other remedies to address Defendants' anticompetitive and discriminatory practices, restore access to suppressed content, and ensure accountability for violations of federal and state laws.

### PARTIES

**Plaintiff**: Erick Blackwood-Head aka Erick Scott Head, an individual residing in Texas, is a creator who published works under titles such as Papa Sorin and Father of Sorin, among others, addressing critical issues including human rights, the war on terror, climate change,

government abuse of power, media collusion, police violence, and racism. Plaintiff's works have been allegedly suppressed by Defendants due to their advocacy.

**Defendants**:
Comcast Corporation (NBCUniversal): A Delaware corporation headquartered in Philadelphia, PA, owning NBC, MSNBC, Peacock, and Universal Studios.
The Walt Disney Company: A Delaware corporation headquartered in Burbank, CA, owning ABC, ESPN, Disney+, and Marvel Studios.
News Corporation: A Delaware corporation headquartered in New York, NY, owning Fox News, The Wall Street Journal, and Fox Entertainment.
Paramount Global: A Delaware corporation headquartered in New York, NY, owning CBS, Paramount+, and Showtime.
Warner Bros. Discovery, Inc.: A Delaware corporation headquartered in New York, NY, owning HBO, CNN, and Warner Bros. Studios.
Amazon.com, Inc.: A Delaware corporation headquartered in Seattle, WA, owning Amazon Prime Video, MGM Studios, and related media assets.

## JURISDICTION AND VENUE

This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) for claims under the Sherman Act, Clayton Act, and 18 U.S.C. §§ 241, 242, and 28 U.S.C. § 1332(d) for diversity jurisdiction (if applicable).
Venue is proper under 28 U.S.C. § 1391(b) as Defendants conduct substantial business in this district, and the effects of their conduct, including suppression of Plaintiff's works, are felt herein. This Court has personal jurisdiction over Defendants as they operate within this district and have purposefully availed themselves of its laws.

## FACTUAL ALLEGATIONS

A. The Big Six's Market Dominance
The Big Six control approximately 90% of the U.S. media market, including broadcast networks, cable channels, streaming platforms, and film studios, creating a vertically integrated structure that limits access for independent creators like Plaintiff.
This consolidation, accelerated by the Telecommunications Act of 1996, reduced media ownership from 50 companies in 1983 to six by 2020, enabling Defendants to dominate public discourse.

**B. Conspiracy to Suppress Plaintiff's Works and Public Interest Stories**

Defendants have conspired to suppress Plaintiff's works, including Papa Sorin and Father of Sorin, and others, which address human rights, the war on terror, climate change, government abuse of power, media collusion, police violence, and racism, due to their divergence from Defendants' commercial and government-aligned narratives.

**Suppression Mechanisms**: Defendants have used their control over distribution channels (e.g., streaming platforms, broadcast networks) to limit or block Plaintiff's content, favoring established artists who align with commercial interests or government narratives. This mirrors the Texas AG Paxton case, where investment firms allegedly pressured companies to align with specific agendas, reducing market output.

**Evidence of Suppression**: Plaintiff's works have been deplatformed, shadowbanned, or denied distribution on Defendants' platforms (e.g., Amazon Prime Video, Disney+, Peacock, etc), and these companies facilitated the illegal distribution of illegally obtained, oral and wireless communications, and personal and private data. Through these activities, these companies conspired, and enacted a campaign of media disenfranchisement, and targeted psychological abuse.

**Cover-Up of Systemic Abuses**: Defendants have allegedly suppressed stories exposing human trafficking, illegal government surveillance, and forced disappearances, similar to practices described in the OMCT report, which details state-sponsored internal exile and torture to silence dissent. For example, Defendants have failed to cover whistleblower reports on trafficking (e.g., Hope Against Trafficking's 2025 findings on social media platforms) and surveillance (e.g., FTC's 2024 report on lax privacy controls).

**Employee Testimony**: Whistleblowers within Defendants' organizations have reported internal directives to prioritize commercial content over public interest stories, including Plaintiff's works, though specific testimony is pending discovery.

### C. Anticompetitive Practices

**Collusive Agreements**: Defendants have coordinated to control content distribution, refusing to license or promote independent content like Plaintiff's, inflating costs for smaller platforms, and excluding competitors, violating the Sherman Act.

**Market Allocation**: Defendants have divided markets to avoid competition, e.g., Disney dominating family entertainment and Amazon leveraging e-commerce-linked streaming, ensuring Plaintiff's works are sidelined.

**Barriers to Entry**: Defendants use their control over distribution (e.g., Comcast's cable infrastructure, Amazon's cloud services) to impose high barriers, such as restrictive licensing or algorithm suppression, preventing Plaintiff's works from reaching audiences.

**Impact on Consumers**: These practices limit access to diverse content, increase subscription costs, and suppress critical voices like Plaintiff's, harming the public interest.

### D. Discriminatory Practices and Civil Rights Violations

Defendants have discriminated against Plaintiff due to their advocacy for human rights and specific religious viewpoints, violating 18 U.S.C. §§ 241 and 242.

**Religious Discrimination**: Defendants have suppressed Plaintiff's content due to its alignment with certain christian and unitarian egalitarian philosophies, while elevating material glorifying violence and criminality (e.g., content promoting gang culture or war propaganda). In addition, Plaintiff has suffered from antisemetic hate speech, despite advocating all people's inherent dignity.

**Suppression of Anti-War and Anti-Trafficking Voices:** Defendants have prioritized content supporting the war on terror and commercial interests over Plaintiff's anti-war, anti-trafficking, and anti-rape culture narratives, chilling free expression.

**Disproportionate Access**: Defendants have given preferential access to government employees and established artists, sidelining whistleblowers and direct sources like Plaintiff, who expose systemic abuses.
18 U.S.C. § 241 (Conspiracy Against Rights): Defendants conspired to deprive Plaintiff of their First Amendment rights to free speech and expression by suppressing their works and favoring government-aligned narratives, as evidenced by coordinated content moderation practices across their platforms.
18 U.S.C. § 242 (Deprivation of Rights Under Color of Law): Defendants, acting under color of law through their FCC-licensed broadcast operations and government contracts, deprived Plaintiff of equal protection by discriminating against their religious and advocacy-based viewpoints. Plaintiffs political activities also resulted in death threats, per reports regarding the 2011 Occupy Houston Assassination Plot, which they have subsequently and since suppressed during events that occurred between 2020 and 2025, instead prioritizing less vetted claims.

**Historical Precedent**: Defendants' actions echo past incidents, such as Comcast's alleged discrimination against African American-owned media and CBS's ban on Janet Jackson post-Super Bowl XXXVIII, showing a pattern of suppressing dissenting voices.

### E. Cover-Up of Systemic Abuses

Defendants have aided in covering up systemic abuses, including forced disappearances, mirroring tactics in the OMCT report, by refusing to air or promote stories exposing government misconduct, such as illegal surveillance (e.g., NSA programs) and human trafficking networks.

**Forced Disappearances**: Plaintiff's works addressing forced disappearances, akin to those in the OMCT report, were suppressed to protect government and corporate interests, as Defendants rely on government contracts and regulatory approvals. In addition, Plaintiff has suffered from an attempted forced disappearance, but these companies have refused to engage with these topics, pushing narratives regarding foreign conflicts to distract from their involvement in domestic events.

**Commercialism and Government Collusion**: Defendants' promotion of commercialized content over Plaintiff's advocacy on climate change, police violence, and racism reflects a broader conspiracy to maintain the status quo, similar to the investment firms' actions in the Texas case.

### F. Regulatory Context

The FTC and DOJ have scrutinized media consolidation, with the DOJ reviewing the Disney-Fox-Warner Bros. Discovery sports-streaming venture for antitrust violations.

FCC Commissioner Brendan Carr's investigations into media practices, including content complaints, suggest regulatory leverage over Defendants, particularly Paramount Global's pending merger.

The Paxton case (Texas v. BlackRock, E.D. Tex. 2025) provides a precedent for challenging coordinated corporate actions that harm markets and consumers, supporting Plaintiff's claims.

## CAUSES OF ACTION

### Count I: Violation of Sherman Antitrust Act, Section 1 (15 U.S.C. § 1)

Defendants' coordinated agreements to suppress Plaintiff's works, control content distribution, and exclude independent creators constitute unreasonable restraints of trade, harming competition and consumers.

### Count II: Violation of Sherman Antitrust Act, Section 2 (15 U.S.C. § 2)

Defendants have monopolized the media market by leveraging their dominance to exclude Plaintiff's content and favor established artists, maintaining unlawful market power.

### Count III: Violation of Clayton Antitrust Act, Section 3 (15 U.S.C. § 14)

Defendants' exclusive dealing arrangements and tying practices (e.g., requiring distributors to prioritize their content) substantially lessen competition, preventing Plaintiff's works from reaching audiences.

### Count IV: Violation of 18 U.S.C. § 241 (Conspiracy Against Rights)

Defendants conspired to deprive Plaintiff of their First Amendment rights by suppressing Papa Sorin, Father of Sorin, and related works due to their advocacy on human rights, religion, and systemic abuses, as evidenced by coordinated content moderation and deplatforming, and engaging in illegal distribution.

### Count V: Violation of 18 U.S.C. § 242 (Deprivation of Rights Under Color of Law)

Defendants, acting under color of law through FCC licenses and government contracts, deprived Plaintiff of equal protection by discriminating against their religious viewpoints and advocacy, favoring government-aligned narratives.

### Count VI: Violation of State Consumer Protection Laws

Defendants' deceptive practices, including suppressing Plaintiff's content and covering up systemic abuses, violate [Texas Deceptive Trade Practices Act], harming Plaintiff and the public.

### PRAYER FOR RELIEF

Plaintiff respectfully requests: a. A declaratory judgment that Defendants' practices violate federal antitrust and civil rights laws. b. Injunctive relief prohibiting Defendants from suppressing Plaintiff's works, covering up systemic abuses, and engaging in anticompetitive and discriminatory practices. c. Divestiture of certain assets (e.g., broadcast networks, streaming platforms) to restore competition. d. Compensatory and treble damages under 15 U.S.C. § 15 for antitrust violations and 42 U.S.C. § 1983 for civil rights violations. e. Attorneys' fees, costs, and other equitable relief as the Court deems just.

### DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all triable issues.

Respectfully submitted,
Erick Blackwood-Head
Aka Erick Scott Head

2202 Nodding Pines Dr Apt 232
Corpus Christi, TX 78414
PH: (361)463-9030
Email: Kirect1@gmail.com
Defendant, Pro Se
Date: 8/13/25